Good morning. May it please the Court. Eleodoro Moreno, Jr. for the petitioner. Fesehaye Okube Habte. In this case, substantial evidence does not support either the BIA's and the IJ's adverse credibility finding or the denial of Mr. Habte's second motion to reopen. In its decision, the BIA agreed with the immigration judge's reasoning regarding the adverse credibility finding. Thus, this Court looks to the immigration judge's decision to determine if that reasoning is supported by substantial evidence. Here, the IJ provided three reasons in support of her adverse credibility finding, but none of those three are supported by substantial evidence. First, the IJ spoke about a purported inconsistency regarding the attire military prisoners wore while Mr. Habte was detained. However, there was no inconsistency regarding this topic because Mr. Habte specifically explained further in his testimony exactly what were the circumstances under which prisoners wore one thing or the other. Specifically, Mr. Habte made clear that members of the military wore military attire while military prisoners wore overalls. He continued that military members would wear overalls during the ---- Excuse me, was he identifying himself as a military person or as a prisoner? In the first part of that testimony, he identified himself as a military member, that he was a member of the military. Now, when he was questioned about it, and that was on page 586 of the record, then they moved on to another topic, and then at 589 through 590 in the transcript, then they go and ask him again about the perceived inconsistency, and he explained that the prisoners would wear these overalls, the military members would wear attire, while he was a prisoner, he wore the overalls. However, he mentioned also that there were times when there wasn't enough overalls to go to all prisoners, thus they would just wear whatever was available. So why was the I.J. required to believe that testimony? Well, Your Honor, the I.J. failed to consider that explanation at all. The immigration judge simply stated that there was an inconsistency when through his testimony there wasn't, and the judge didn't consider that explanation by Mr. Habte, and that, of course, constitutes error, and this purported inconsistency can't support the adverse credibility finding. He said the overall was still military attire. Well, he mentioned that, yes, but he only said that in the context of that's what military members would wear when they were physically training. Now, he made that distinction. Now, he was speaking generally at first, but then he clarified and explained specifically when one, either the military members or prisoners, what they would wear when and why, and that, again, explanation was not considered by the judge. Now, the second and third reasons that the immigration judge gave for her adverse credibility finding relate to Mr. Habte's national I.D. card. Now, the first one the I.J. mentioned was the discrepancy in the birth city on the I.D. card. Now, Mr. Habte testified, and in his I-589 it states that he was born in Nasmara. Now, the I.D. card states Gregaria. Now, here the I.J. again failed to consider Mr. Habte's explanation, which was in error. Mr. Habte explained that the application that he filled out to get that I.D. card was vague, was requesting that he provide where he was from, and that he provided and that he believed that that meant where his roots were from. And he explained that that is where his mother was from, which is Gregaria. The judge didn't consider that. How do you know the judge didn't consider it? Well, because on page 542, which is the immigration judge's decision, all she states is that there is an inconsistency within those cities, and that supports there is an inconsistency between the birth city, and that supports the adverse credibility finding. At no time does she analyze the explanation by Mr. Habte. Now, earlier in that decision, she mentions that he said that, but there's no analysis of that explanation or why she's discounting it in page 542, which is her analysis as to why that discrepancy supports the adverse credibility finding. You're talking about the identification card? Yes, the national I.D. card, Your Honor. All right. But didn't, I mean, did I.J. afford Mr. Habte an opportunity to explain why he had not received an I.D. card contrary to the policy he testified? It seems like his explanations were inconsistent with each other. At one point, he explained that he was not issued an I.D. because the country was in chaos. At another point, he explained that he was not issued an I.D. because he was being forced into an extended military service illegally. He also contradicted that latter explanation, testifying that his military service was more on a voluntary basis. I mean, don't these multiple inconsistencies support the I.J.'s conclusion? First off, Your Honor, I would like to point out that that's not the basis upon which the immigration judge or the BIA found Mr. Habte not credible. Thus, this Court can't rely on that analysis in order to support the adverse credibility finding. But even if you could, there are no inconsistencies. If we point to page 571 of the transcript, Mr. Habte is asked specifically that after the one year and eight months of required service, did he continue to serve voluntarily? And he said no. I want to get to his failure to establish his identity because that seems to be the most important ground. Can you talk about that? Yes, I can, Judge. And so the I.J. here held that Mr. Habte failed miserably to establish his identity. First, it's important to note that this is a question of failure of proof, not one of credibility. Simply because he failed to establish his identity doesn't mean he's not credible. But here the judge committed error as well. The judge only – the judge excluded three very important documents, the national ID card, the baptismal certificate, and the school record, but then stated that she would admit them simply to assess his credibility but not for the truth of the matter asserted. Now, that's error in and of itself. The judge should not have done that. And this case must be remanded for the judge to consider that document in its totality. Counsel, you've – let's assume we don't agree with you on the credibility. You've also raised on your motion to reopen the notion that even if he were not credible, the mere act of applying for and being denied relief in the United States would be, according to what you proffered as new evidence post-2008, would be sent to Eritrea. Can you explain why that is new evidence? Yes, Judge. So the board denied the motion saying that that wasn't new evidence because he – there was some indication that asylum seekers who return may be facing harm. However, it's important to note that here we have to determine whether the evidence of country conditions show that there is either a worsening or a change which will make a realistic probability. So what – get to the point. So here, specifically, the board cited the 2004 Amnesty International report submitted in the original proceedings, which states that Eritreans returning from abroad risk arbitrary detention if they are returned to Eritrea and are suspected of opposing the government. That same agency in 2009 then stated, which is included with the country are at risk of arbitrary detention, torture, and ill-treatment, especially those who are – who have deserted the armed forces or are accused of disloyalty to the government. And they say, and the mere act of applying for asylum abroad is considered evidence of treason. How is that qualitatively different from what he had filed before? Well, here, Judge, it's saying that all individuals that are returning from abroad, forcibly returned from abroad, are detained. And in that instance – What did you say before? Well, it said that individuals may be detained, and if they determine that they all were asylum seekers, then they may be tortured while in detention. Now, the government argued in its first brief that that was not sufficient to show that it would be more likely than not that Mr. – that the government would learn that he was an asylee, because if they didn't know he was an asylee, he wouldn't be detained. However, the new country condition evidence illustrates that all individuals coming from abroad are being detained when they're forcibly returned. And while in detention, they suffer torture, and it's very likely that during that time, he will – the government will learn that he either applied for asylum or, at the very least, that he has no proof that he exited the country legally. That's another very important point here. So they will immediately assume he left illegally, and then that's another reason for which they will try to harm him. I see that my time has finished. Thank you very much. Thank you, counsel. We'll give you one minute for rebuttal. Thank you. We'll hear from the government. May it please the Court. I am Sarah Byram, appearing on behalf of the Attorney General. This Court should deny the petition for review because the petitioner simply cannot overcome the high burdens of proof that he faces. Now, with respect to his adverse credibility finding by the agency, here he bears the burden of establishing credibility, and the agency found numerous bases on which to question his credibility, all which were supported by substantial evidence. Now, this Court only needs to uphold one of those bases to affirm the agency's decision. Now, with respect to the identity, petitioner's identity, which is really one of the cores of the agency's decision, the petitioner did submit this identity card, which the agency held was insufficient, in large part because of the inconsistencies about his place of birth. The I.J. considered his explanations, and she found them insufficient. She doesn't need to write, you know, a long script on why she rejected it. And also, when the inconsistency is quite obvious, as it was in this case in the record, that also goes to support the idea that she does not need to write a lengthy  Sotomayor, I think Mr. Leno argues that they weren't inconsistent. I think one stated his place. The other one, he said, were his roots, like maybe where his family had come. Is that really inconsistent? Well, there's a little bit more to it than that. The petitioner had first indicated that, with respect to the identity card, that he hadn't applied for one, and that the Eritrean government just gave these identity cards, and they basically put whatever information they wanted. Then on further questioning, he later stated that, no, he did fill out an application, but the application was vague in terms of what place of birth exactly meant. In addition, he stated that place of birth, he, that could also mean roots, which is why he did not put Asmara, but put Gregaria. But there's no indication that that's sufficient either, particularly when later on in the translation for place of birth means place of birth, or Counsel, could you step back from the mic a little? You're having some feedback. I'm sorry. Could mean place of birth, or place of baptism, which is also used in some context. But here, for him, both of those places was Asmara. So he presents a myriad of explanations, but none of which really seem to reconcile his inconsistencies in this regard. Assuming we accept your position that he has an established error on that, could you address the issue of the motion to reopen? Because I've looked at the information about, you know, that came up post-2008, and I read your brief as agreeing that there has been increased risk to returning asylum seekers. As Judge Murguia said, is it there, asked, is it there a quantitative, or rather, qualitative difference between the reports that the BIA relied upon originally and cited in the denial of the motion, and the post-2008 reports? That there is an increased risk. It's our position Regardless of whether he was, just the fact that he is someone who sought asylum in the United States. I know there's some allegation in the briefs, I don't see any evidence to support it, but that DHS keeps it secret. Somehow I have some skepticism that, you know, there's an airtight secrecy in this day and age. But assuming he goes back, isn't, don't the reports suggest, State Department and Amnesty reports now suggest that there is a real risk just for having come here and tried to seek asylum? Yes, Your Honor. We can see that the reports do indicate that there is a risk as a returning asylum seeker, but here, in the motion to reopen context, Petitioner must show that his claim is, shows a material change. Yes, but where does the BIA say that he has, it seems to reject it simply on the basis of reports? It doesn't even cite the reports that he brought forward. Well, the Board rejects it on the idea that his claim that he presents now, that he will be tortured as a returning asylum seeker, excuse me, is not a new claim, because it's a claim that he raised during his merits proceeding for asylum. And he submitted evidence at that time which indicated that returning asylum seekers, returning expats to Eritrea could reasonably be tortured. May. And now, as you've acknowledged, the conditions have worsened. So where does the BIA say, well, this isn't a new claim, but there's new evidence? He was making the case originally, but he didn't have the substantial evidence that the 2008, post-2008 State Department report and the amnesty report now lend credibility to. Well, those reports lent credibility to that claim prior, but because the Board found him incredible, all he had to stand on was the country condition reports, which was quite sparse. You know, it said they may be, but if you read that report, it's anecdotal and it's not the qualitative analysis that you get later on in the subsequent more recent reports. It seems to me, you know, conditions worsened, as you say. So why won't the BIA address that and explain to us why it's nonetheless still okay to send this person back to Eritrea? If the Court wishes to rein in on that point, the Board would certainly address it. It's our position here today that this is a claim that he had brought prior during his initial asylum proceedings. In the motion to reopen context, it's not a new claim. But did the IJ or BIA consider Mr. Hapte's status as an asylum seeker in denying him relief from removal? The Board, although it may not have explicitly mentioned it, Petitioner does raise that claim to the Board. I'm sorry, but I'm sure I know what your answer is. Did the Board address the specific circumstances of a returnee, an asylum seeker who returns, who's been returned to the country? On the face of the Board's decision, it would seem that they may not have specifically addressed it in their decision, although he did present it, and the presumption is that the Board considered all the relevant evidence and the claims. But in their decision, they may not specifically reject his claim on the basis of a returning asylum seeker. Could, you know, Mr. Hapte's undisputed status as an asylum seeker combined with the country conditions evidence be enough to show that Mr. Hapte is more likely than not to be subjected to torture if he returns to Eritrea? In this case, we would hold that they would not be, because it's not a continuation of an earlier claim. He still cannot show that he's credible, which was in part why the Board denied him. Credibility is not a part of the cap analysis, though. But the – in this case, the Board had denied his motion to read – oh, excuse me. With respect to the cat claim, excuse me, yes, the credibility analysis does not need to come into play, and the Court can determine a torture convention claim on the basis of country condition reports. In this case, we would hold that he hasn't shown sufficient evidence to show that he, on an individualized analysis, would suffer the torture that he claims. Well, that's not what the Board held. That's what you're arguing, and I think that's the problem I have with this case. It seems to me that the country reports, and we see a lot of these, about changed country conditions. We have a case later on the docket where the government's arguing, well, the country conditions in India have improved for Sikhs, so therefore, even though there might have been persecution in the past, things have changed for the better. In this case, now we have something where he wasn't persecuted. You don't think he's credible, but we concede that the conditions have worsened, and we don't have the BIA telling us why the government would put somebody in a position where there's some credibility to his fear, regardless of whether he was a deserter or not, that he will be detained and tortured or abused, whether it's under CAT or withholding or removal. That's my problem. All right, thank you, counsel. One minute for rebuttal, if you need it. Thanks, Judge. I'd like just to make two points. First, the government keeps saying that it's not a new claim. In order to reopen under changed circumstances or changed conditions, there's no requirement that there's a new claim, just that conditions in the country have a realistic probability that they'll meet their burden. They don't even have to show that it would be more likely than not, just a realistic probability. Now, that's the only burden here, and the country conditions show that in the motion to reopen context, there's at least a realistic probability that a new hearing would need to be required. Therefore, in that context, the court must reverse the denial of the motion to reopen. Now, the government, secondly, then argued that the court would only need to uphold – if the court upholds one adverse credibility reason, then it can uphold the judge's adverse credibility finding. That's incorrect. Under the Real ID Act, the judge must consider the totality of the circumstances. Thus, weighing is undermined by the Real ID Act, because if one is thrown out, the judge hasn't considered the totality of the circumstances. Thank you. All right. Thank you, counsel.  The case just argued is submitted for decision by the court.
judges: Fisher, Rawlinson, Murguia